Filed April 4, 1894.

---

No. 764.

JONES v. THE STATE.

CRIMINAL LAW.—*Indictment Subsequent to Information.—Costs.—Merger.* —Where, subsequent to arrest and bail under an information, the grand jury takes cognizance and returns an indictment for the same transaction, and judgment is rendered upon the indictment, the defendant is not liable for the costs made under the information, as the proceeding by information does not merge into the indictment so as to carry the costs of the former into the latter.

From the Wabash Circuit Court.

*C. E. Cowgill* and *H. C. Pettit*, for appellant.

*A. G. Smith*, Attorney-General, and *F. T. Edenharter*, for State.

LOTZ, J.—Briefly stated, the facts of this case are, that on the 19th day of May, 1891, an information was filed in the Wabash Circuit Court, charging the appellant with the crime of malicious mayhem. A warrant was issued, and appellant was arrested in Noble county, Indiana, on the 14th day of June, 1891, and taken to Wabash county, where he entered into a recognizance for his appearance in the Wabash Circuit Court at the following September term thereof. The accrued costs on this proceeding up to this time aggregated the sum of $26.66.

On September 14th, and before appellant's case was called for trial under the information, the grand jury of Wabash county was impaneled and remained in session until the 23d day of September, when it made its final report and was discharged.

The grand jury fully investigated the charges against the appellant during its said session, and returned an indictment against him for assault and battery. He was re-arrested on this charge, pleaded guilty to the assault and battery, and was fined. Judgment was rendered on his plea, and he entered replevin bail for the stay of execution. At the time he entered replevin bail, the costs were not taxed, and the amount thereof was left in blank in the judgment. The indictment was predicated upon the same transaction as the information, and was filed under and took the same case number as the information. All the costs made under each proceeding were taxed and charged to the appellant.

When the stay expired, the court was not in session, and appellant, to prevent being rearrested, paid, under

protest, all the costs. The $26.66, still being in the hands of the clerk of the court, he filed a motion requesting the court to order the sum returned to him as having been unjustly taxed and improperly collected from him. This motion the court denied. Hence this appeal. The record is silent as to what disposition was made of the information.

Malicious mayhem includes and embraces simple mayhem and assault and battery. *State* v. *Fisher*, 103 Ind. 530.

Appellant's contention is that the return of, and the prosecution under, the indictment operated as an abandonment of the proceedings under the information; that the indictment is a separate and distinct prosecution, and that when it was returned it should have been given a new number on the docket; that the subsequent proceedings should have been under this number, and only the costs accruing under it should have been taxed against him, and that as he was not liable for the $26.66 accrued costs, the same should be returned to him.

The State contends that it has ever been the spirit and policy of our law to prosecute felonies by indictment rather than by information; that when the grand jury convened the law made it the imperative duty of that body to inquire into the felony of which the appellant stood charged by the information; that when the indictment was returned, the proceeding by information merged into the proceeding by indictment by operation of law; that the indictment is but a continuation of the prosecution commenced by information, and that the costs of the first proceeding are carried into the latter, and that the fact that the grand jury placed a milder charge against the appellant ought to be a matter of thanksgiving rather than of complaint. The learned

judge who tried the case below seems to have acted upon the theory asserted by the State.

The identical question presented has never been decided in this State by any case which has been called to our attention.

By section 1839, R. S. 1881, it is provided that when a defendant is found guilty in a criminal proceeding he shall be liable for all costs, unless the court or jury trying the cause shall expressly find otherwise. If the costs here in controversy are properly a part of the costs incurred in the prosecution against the defendant by indictment, then he should be compelled to pay them. If not then this money should be returned to him.

The statutes of this State recognize two methods of prosecuting public offenses in the circuit and criminal courts: One, by indictment; and, two, by information. An indictment is a written accusation, or charge of crime, presented to a court upon the oath of a grand jury. A criminal information is an accusation of crime preferred to a court by the law officer, whose duty it is to prosecute the pleas of the State.

In the method of trial, after a criminal accusation has been preferred, there is no difference between that by indictment and that by information; but in the method of preferring the charge there has ever been a marked difference between them. The prosecution of public offenses by indictment found by a grand jury, is one of the distinctive features of English criminal jurisprudence. This method has never prevailed among any other people, except in few instances, and in comparatively recent times. Forsyth Trial by Jury, p. 297.

The origin of the grand jury is shrouded in historical doubt. According to some authorities, traces of its existence is found among the customs of our Saxon ancestors. Crabb Eng. Law, 35.

The old custom of the northern wapentake, the reeve and thanes, and fellow swearers in a rudimentary form furnish nearly all the characteristics of the grand jury. Pike's History of Crime in Eng., vol. 1, p. 120.

From the accounts of the early commentators, the grand jury was, at first, not only a body that accused, but which, also, tried public offenders. But it later became an informing or accusing body only without whose previous action no person charged with felony (except in a few special cases) could be put upon his trial. In former times, when the power of the crown was much greater and more arbitrary, the subjects were exposed to partisan and oppressive prosecutions. In the struggles which arose between the power of the King and the rights of the people, the grand jury often stood as a barrier against persecutions in the name of the King, until at length it came to be regarded as an institution by which the subject was rendered secure against oppressive and unfounded prosecutions by the crown. In this country there has been but few occasions which required the existence of the grand jury to protect the citizen against the oppressive acts of the government. It is here maintained, not only as a means of bringing to trial persons accused of crime upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether from the government, from partisan passion, public clamor, or private enmity and malice. 2 Sawyer, 667.

Prosecution by indictment is the most constitutional, regular and safe, as well as the most usual mode of proceeding upon criminal charges. 1 Chitty Crim. Law, p. 162.

The necessity of protecting the citizens through the medium of the grand jury is recognized by the constitution of the United States.

No person shall be held to answer 'for a capital or otherwise infamous crime unless upon presentment or indictment by a grand jury, except in certain cases arising in the military or naval service. U. S. Const. Amend., Art. 5.

True, this provision has been construed to apply only to the violation of federal laws, but similar provisions are found in the constitution of nearly every State in the Union.

In the first constitution of Indiana, adopted in 1816, it was provided that no person should be put to answer any criminal charge, except by presentment, indictment, or impeachment. Article 1, section 12.

The constitution of 1852 provides that the General Assembly may modify or abolish the grand jury system. Article 7, section 17.

The Legislature has enacted laws which modify the grand jury system, but all efforts to abolish it have met with signal failure. It has, however, authorized prosecutions by information in certain classes of cases and under certain conditions. Criminal informations derive their origin from the common law. Prynne's case, 5 Mod. 459; Law Lib., 56.

Prosecutions by information are analogous to the method of criminal procedure which prevailed among the ancient Romans. Adams' Roman Antiq., p. 278.

And similar methods still prevail among the nations that have adopted the civil law.

According to Mr. Forsyth, the grand jury system is unknown in both France and Germany. Forsyth Trial by Jury, pp. 297, 327.

The want of a jury of accusation has been deplored by the jurists of both countries. The initial step in prefer-

ring a criminal charge is exceedingly arbitrary and inquisitorial in both of those countries.

As prosecutions by information are capable of great abuses, and were often used by malicious and vindictive persons as a means of oppression, they were looked upon with disfavor by the English courts, and their scope was limited by statute until they were only tolerated in such offenses as peculiarly tended to disturb or endanger the government, or materially tended to prejudice the public generally. 4 Black. Com., 309.

That eminent and philosophical writer on criminal jurisprudence, Mr. Wharton, in presenting his objections to prosecutions by information, says: ''The ordeal of a grand jury is a proper one in all cases of serious crime. It is a terrible thing for a man to be put on trial for an offense involving ignominy and contingent heavy punishment. The expense is heavy; the mere fact of being put upon trial is a great discredit. There is always a risk of an unjust conviction. Under such circumstances, the protection afforded by a grand jury is just, as well as politic.'' 3 Crim. Law Mag., p. 77.

It has been the spirit and policy of our criminal jurisprudence, from time immemorial, to bring the prosecution of the graver public offenses as near to the body of the people as possible, and this policy extends not only to the trial of the charge itself, but to the manner of making the accusation. Our statutes and decisions recognize this policy. But as there may be certain emergencies arising in the prosecution of such offenses, the statute has provided a method to cover such emergencies. This method is by information. The prosecution of a felony by information is a matter of expediency, and can be resorted to only when it comes within the necessity defined by the statute. It is a method in derogation of the common right, and the statute which gives it sanc-

tion should be strictly construed.  Whenever the necessity for the prosecution by information fails, the information falls.

In *State* v. *Boswell*, 104 Ind. 541, the reasons for these conclusions are stated with great force and clearness. To authorize a prosecution of a felony by information, it is essential that the court be in session, and that the grand jury be not in session.  Section 1679, R. S. 1881.

But a prosecution of a misdemeanor by information may be instituted at any time.  *Hoover* v. *State*, 110 Ind. 349.

The law requires that the grand jury shall be convened at least twice in each year.  *Kennegar* v. *State*, 120 Ind. 176.

By section 1666, R. S. 1881, the order of business is fixed, and the duty is specially enjoined upon the grand jury that it *must inquire*:  "First.  Into the case of every person imprisoned in the county jail on a criminal charge, and not indicted.  Second.  Into the case of every person under bail in said county to answer a criminal charge, and not indicted."

A person who is proceeded against by information, if not tried before the grand jury convenes, must be either in jail or under bail.  The statute is seemingly mandatory, and requires the grand jury to investigate the cases of such persons as are under the accusation of felony.  If the grand jury fail to take cognizance of such cases or fail to return an indictment, the State may, nevertheless, proceed upon the information to final judgment.  Jurisdiction having once attached, it continues until there is a final disposition of the proceedings.  *Elder* v. *State*, 96 Ind. 162.

But if the grand jury should act in such cases, and return an indictment, then, is the former proceeding merged into the latter by operation of law?  If the

prosecuting attorney should voluntarily enter a *nolle prosequi* upon either an indictment or information before jeopardy has attached, and the person should afterwards be prosecuted for the same offense, the costs of the former proceedings can not be carried into the latter. But if one form of action is blended into another by force of the statute, and the indictment supersedes the information, then it would seem to follow that the costs of the former would be carried into the latter.

There is much force in the argument that if it were not the duty of the grand jury to investigate the cases of all persons in jail or under bail on accusation for felony by information when it convenes, then the prosecuting attorney might continue to file informations for felonies up to the day when the grand jury assembles, and thereby deprive it of nearly all of its duties and functions, as well as depriving the persons accused of the right to have the charges against them investigated by a tribunal which the law has created for public benefit, and to protect them against the malicious and oppressive conduct of others or against public clamor. The appellee relies upon the case of *State* v. *Boswell,* 104 Ind. 541, to support her position.

It is there said: "The provisions made by statute, authorizing prosecutions by information, were intended to secure speedy trials and prevent delays by enabling the prosecuting attorney to present charges upon which the grand jury had no opportunity to act, but they were not intended to permit the prosecuting attorney to proceed by information where there is ample opportunity to proceed by indictment. Where there is an opportunity to present an accusation to the grand jury, the prosecutor can not, upon the failure of that body to return an indictment, proceed against the accused by information. If we were to adopt the theory of the State, it would re-

sult in leaving to the almost unrestrained discretion of the prosecuting attorney the method of prosecuting felonies, other than murder or treason, and in confining the procedure by indictment to a very small class of cases.    This result it was not the intention of the Legislature to produce.''

Strong as this language is, as applied to a prosecution by information after the grand jury failed to indict, it is of still greater force when applied to prosecutions by information before the grand jury convenes, and has had an opportunity to investigate felony cases.    In the latter case the opportunity for the abuse of power is infinitely greater than in the former.    In the latter case the prosecuting attorney might wrest nearly all felonies from the consideration of the grand jury.

*State* v. *Boswell, supra,* differs from the case at bar.    It was there held that where a person was recognized to appear at the ensuing term of the circuit court to answer to a charge of felony and the grand jury convened and were discharged without having returned an indictment against him, the State could not afterwards proceed against him by information.    Here the State proceeded by both methods.    If the first method was abandoned, then no costs follow into the second.    If the first is merged, or was absorbed into the latter, then costs should follow.

The history of the two methods of instituting criminal prosecutions for felonies show that they have ever been distinct and antagonize each other in many of their essential features.    Whilst it is true that the Legislature has modified both in some of their most important respects, a majority of the court are of the opinion that a proceeding by information does not merge into an indictment so as to carry the costs of the former into the latter.

Judgment reversed, with instructions to sustain appellant's motion.

Filed April 6, 1894.